FARMERS SECURITY BANK OF PARK RIVER, a Corporation, Appellant, v. C. F. NELSON, as Administrator of the Estate of Peter J. Wibe, Deceased, Respondent.

(179 N. W. 917.)

**Bills and notes — accommodation shown; bona fide purchase not shown.**

The plaintiff sues to recover on a promissory note $2,528 and interest from March 12, 1914. The defense is that the note was given for a special accommodation to make a show of assets and it was not to be transferred. The evidence shows the payee had no right to transfer the note. It did not sell the note; the bank did not receive it in good faith or for value, or in due course of business. The verdict for the defendant is well sustained by the evidence.

Opinion filed November 1, 1920.

Appeal from judgment and order denying motion for judgment notwithstanding verdict or for a new trial, in District Court, Towner County, Honorable *C. W. Buttz,* Judge.

Affirmed.

*McIntyre & Burtness,* for appellant.

Accommodation paper is paper to which the accommodation party has put his name without consideration. 8 Corpus Juris, 255, 258 (¶¶ 403, 408); Comp. Laws 1913, § 6914.

Accommodation paper cannot be revoked after negotiation. Such revocation, however, affects only one who takes with knowledge of what has been done, and does not prevent a recovery on the instrument by an innocent indorsee to whom it has been negotiated. 8 C. J. 260, 263 (¶¶ 410, 412).

To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had "actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith." First Nat. Bank v. Flath, 10 N. D. 281.

It is not the good faith of the payee that is in question. It is the good faith of the person who parts with his money or other property when he purchases the note. American Nat. Bank v. Lundy, 21 N. D. 167.

The Negotiable Instruments Act in specific terms requires the actual knowledge of the infirmity or defect or knowledge of such facts· as amount to bad faith. Johanna v. Lennon, 32 N. D. 71; Hart v. United States Trust Co. (Pa.) 12 Atl. 561.

*Kehoe & Moseley* and *H. A. Libby,* for respondent.

Accommodation paper is operative only, when negotiated and until negotiation an accommodation party may revoke the instrument, and this is so although security was given the accommodation party for the use of his name. 8 Corpus Juris, 258, ¶ 408.

Wibe wrote the letter to the plaintiff in the last of March, 1914. The note was still in the possession of the association. The plaintiff did not acquire it till the 1st of June 1914. Hence, the revocation was made in time. 8 Corpus Juris, 259, ¶ 408; St. Paul Nat. Bank v. Howe (Minn.) 42 N. W. 200.

The question as to whether Mrs. Olsen wrote and mailed the letter was not in dispute. She and her mother testified that she wrote it. The question as to whether the plaintiff received it was, however, in dispute, and that question was properly submitted to the jury under appropriate instructions. Hurley v. Olcott (N. Y.) 91 N. E. 270; Malloy v. Drumheller (Wash.) 122 Pac. 1005; Marston v. Bigelow (Mass.) 5 L.R.A. 43; Fleming v. Evans (Kan.) 61 Pac. 503; 16 Cyc. 1070.

ROBINSON, J. The plaintiff sues to recover on a promissory note, $2,528 and interest from March 12, 1914. The defense is that the note was given for a special accommodation to make a showing of assets and it was not to be transferred, and that plaintiff is not a good faith purchaser; that it did not receive the note in due course or for value. The jury found a verdict for defendant, on which judgment was entered. Though forty errors are alleged, as usual, the only real question is on the sufficiency of the evidence to sustain the verdict. Certain it is the note was made without any consideration. It was made to the Northwestern Underwriters' Association, a Grand Forks insurance company. He made the note, not that it might be transferred, but that the company might use it as evidence to evade the Blue Sky Law and to mollify the insurance commissioner. The transfer of the note was an act of bad faith. There is evidence that defendant caused his daughter

to write to the bank a letter by which it was cautioned against the purchase of the note. The bank denies the receipt of the letter, but its evidence is no more convincing than is the evidence that the letter was written, mailed, and received by the bank.

Then it appears that the bank did not pay for the note in cash or take it in the usual course of banking business. The note was turned over to the bank with several other notes in exchange for a lot of notes held by the bank. There is nothing to show the value of the notes, and they were all of a questionable character.

In 1909 the bank was organized by three persons, with an authorized capital of $20,000. The capital stock was divided between the three organizers thus: One took sixty-six shares; another took sixty-six shares; C. R. Verry took sixty-eight shares and became the first president, cashier and manager of the bank. The underwriters' company was organized about the same time as the bank. Its authorized capital stock was $100,000. Its directors and organizers were H. H. Hand, E. Sandlie, M. E. Nelson. One, Mr. Bradley, became president; H. H. Hand, secretary. In time they organized the now defunct Fire & Marine Insurance Company, which became a feeder, and obtained large bunches of farmers' notes and transferred them to the parental company—an innocent purchaser, of course—and yet each company had the same officers, clerks, and did business in the same rooms.

Exhibit 6 shows a lot of notes, amounting to $13,399.86, marked "Notes turned over to the Insurance Company by Farmers' Security Bank on June 2, 1914, having been taken up and settled for as per attached sheet." Exhibit 7 purports to show a list of notes turned over to the bank June 2, 1914, by Northwestern underwriters in part payment of notes shown by exhibit 6. The bunch amounts to $8,444.20, and includes the Wibe note in suit. The same exhibit shows the insurance company was given a credit for checking account of C. R. Verry, Treasurer of Northern Fire & Marine Insurance Company, $623.62, and for collection account, $5,290.35. Turned over to the bank same date. This is of importance as it shows that Verry, the organizer and first president and manager of the bank, was also treasurer of the Fire & Marine Insurance Company. It shows a kind of a marital relation between the companies and the bank. Exhibit 8 is a list of notes amounting to $85,445 which, on September 23, 1914, the underwriters

turned over to the bank; agreeing that if any note was not paid when due it may be charged back or collected from the underwriters company after sixty days when it becomes due.

Mr. Bradley was president of the Underwriters Company and of the Fire & Marine Insurance Company. He testifies:

Q. Did your company ever sell and deliver that note to the bank?

A. No, we did not sell the note.

Q. Did your company ever receive any value from the plaintiff bank for the note?

A. No. (Fol. 213, 214, 233.)

It is needless to quote the testimony showing the intimate relations, winding and devious ways of those three corporations. It is clearly shown the Northwestern Company had no right to sell or transfer the note. It did not sell the note; the bank did not receive it in good faith or for value, or in due course of business. Both by the direct and the circumstantial evidence, the verdict is well sustained.

Affirmed.

BIRDZELL and GRACE, JJ., concur.

BRONSON, J., disqualified did not participate.

BIRDZELL, J. (concurring). While I concur in the result stated in the opinion of the court prepared by Mr. Justice Robinson, I regard the statement of facts in that opinion and the discussion of the assignments of error as not sufficiently adequate to demonstrate the correctness of the conclusion. In concurring, therefore, I desire to state a little more fully the contentions upon which the appellant relies upon this appeal, together with whatever additional facts are necessary to indicate the propriety of the affirmance of the judgment.

The first specifications relate to testimony elicited on cross-examination of a witness by the name of O'Brien, an employee of the bank, regarding some notes, aggregating between forty-nine and fifty-two thousand dollars. These were notes of the Northern Fire & Marine Insurance Company. At the time the evidence was received it was objected to on the ground that the transaction involving them was entirely distinct from that involving the note in suit. The evidence was received, however, upon the understanding that its relevancy would be

established later.    Appellant's counsel later moved to strike it out on the ground that it had not been connected with the Wibe transaction, and the contention is made upon this appeal that it was prejudicial error to allow the jury to consider such testimony.    Other testimony relating to this group of notes was to the effect that at the time they were received by the bank a pass book was issued to the company representing the aggregate amount so deposited with the bank.    It would seem, however, that the deposit so entered did not represent a bona fide debit and credit transaction with the bank; that the bank did not purchase the notes at all or enter them on its books as bills receivable, but that it took them for collection and to be credited up to what was known as the "Collection Account."    It further appears that notes carried by the bank which had run sixty days past due and which were indorsed by the Northwestern Underwriters' Association were to be charged back to this collection account.    There was further evidence to the effect that there was a deficit in the collection account some time prior to June 1, 1914, to the extent of $10,190, which was caused by the act of the cashier of the bank, one Verry, in taking from the notes so held for collection a number of them, aggregating $10,190, and placing the amount partly to his own credit and partly to the credit of other accounts in which he was personally interested.

It appears that the bank took the note in suit on June 2, 1914, receiving it from the Underwriters' association in part payment of a group of notes, owned by the bank and entered in its bills receivable account, aggregating with interest $14,692.66, which were past due and which were turned back to the insurance company.    The memoranda which were made at the time in connection with the listing of the notes exchanged are strong evidence of the identity of the insurance company and the underwriters' association for purposes of the financial transactions with the plaintiff bank.    For instance, the list of notes turned back to the insurance company is headed as follows:

"Notes turned over to Insurance Co. (N. W. Und. Ass'n), by Farmers' Security Bank on June 21, 1914, having been taken up and settled for as per attached sheet."

The attached sheet is headed:

"Notes turned over to bank on June 2nd, 1914, by N. W. Und. Ass'n as part payment of notes described on first sheet."

Among the notes so listed is the note in suit. They aggregate $8,544.20. This sheet also contains memoranda showing the payment of cash items making up the difference between $8,544.20 and $14,-692.81, or over $6,000. The respondent contends that the moment Verry took notes held for collection amounting to $10,190, the bank should have credited the collection account of the insurance company with that amount. And, since it was understood that past-due notes held by the bank and indorsed by the Underwriters' association were proper items to charge against the collection account, the notes which the bank turned back on June 2d in exchange for the note in suit should have been regarded as paid and all liability of the underwriters' association thereon canceled. Or, to state the matter another way, there was no consideration whatsoever or value given for the transfer to the bank on June 2d of the Wibe note, since it operated only as payment of obligations which the bank was otherwise bound to regard as paid. I am of the opinion that there is ample evidence to establish the identity of the two companies for purposes of the financial transactions of the bank and that the connection between the arrangement with reference to the forty-nine thousand dollars of notes held for collection and the application of the proceeds in payment of notes held by the bank in its bills receivable account is so closely related to the transaction regarding the Wibe note as to affect the consideration for its transfer to the bank. There is additional testimony that further tends to establish the connection which it is unnecessary to mention. For these reasons, I am of the opinion that no error was committed in admitting the testimony relative to the $49,000 transaction.

It is argued that the court erred in allowing one Bradley, an officer of the insurance company and the underwriters' association, to testify concerning promises made to return the note in suit to the maker. Reading the whole of his testimony, it appears that it does no more than to present to the jury from his standpoint the true character of the transaction between the underwriters' association and Wibe. It was properly received for such purpose. It appears that the trial court properly instructed the jury on the subject of the liability of an accommodation maker. So that, under the instructions, the jury was compelled to find a verdict for the plaintiff if it had believed that it gave value for the note without knowledge that the accommodation had been

withdrawn or that it had been diverted from the purpose for which it was originally given. Under the instructions the plaintiff's rights were to be measured by its knowledge at the time it took the instrument unaffected by any subsequent transactions between the association and Wibe. The testimony objected to was, in my opinion, competent and material for the purpose above indicated.

The appellant complains of evidence going to establish an admission made by one of the attorneys for the bank before the judge of the county court of Towner county in certain probate proceedings in the estate of Peter J. Wibe, deceased. It is claimed that the attorney for the bank represented to the county judge that the note in suit was an accommodation note. There is abundant evidence that the note was an accommodation note, and the plaintiff's primary contention is that it can recover as a holder for value notwithstanding such fact. Even conceding, then, that the testimony establishing the admission of the plaintiff's attorney should not have been received, it was clearly error without prejudice.

The appellant seems to place principal reliance upon the alleged error of the trial court in permitting the case to be reopened after both sides had rested for the purpose of taking additional evidence and of admitting thereafter the testimony of one Agnes Olson, a daughter of the deceased. She testified that she usually wrote her father's letters for him, and that in the latter part of March, 1914, she wrote a letter to the plaintiff bank for her father in response to an inquiry which he had received from the bank. The bank denies having written the letter of inquiry, as well as having received the letter which Mrs. Olson testifies that she wrote. The appellant constructs from her testimony the contents of the letter which, if written, substantially read:

"I am surprised to see that my notes are offered for sale as that wasn't my understanding with the Northwestern Underwriters' Association to sell them. So you will have to take your own risk if you buy those notes, as there is no other security behind them but the Northwestern Underwriters' Association. I wrote Bradley to return the notes."

An appellate tribunal, in a case of this character, is in no position to weigh evidence or pass upon the credibility of witnesses. It is clear that if a letter such as the above was written and mailed, it has a most important bearing upon the issues in this case and we cannot deter-

mine that the trial court abused its discretion in reopening the case to permit testimony of this importance to be given. The appellants argue that the letter, if written, would constitute no notice to the bank that Wibe had withdrawn his accommodation from the underwriters' association. It would appear, however, that the letter was such as to clearly apprise the bank that Wibe did not recognize the note as a binding obligation of any sort, and that he had, in fact, withdrawn his accommodation.

It is also argued in this connection that the court erred in instructing the jury that it was for them to say whether the latter amounted to a protest against the sale of the note by the underwriters' association or whether it amounted to a notice to the bank that it was being diverted by the association or notice that he was withdrawing his accommodation. It is said that the legal import of the letter was for the court and that it should not have been left to the jury to determine its effect. In my opinion, the appellant is right in contending that the legal import of the letter was for the court and should not have been left to the jury, but I am further of the opinion that the court would have been justified in instructing the jury that the letter, if written and received, amounted to notice that the accommodation was withdrawn and consequently to notice of a complete defense. The instruction, then, was really more favorable to the plaintiff than it should have been.

Though there are additional assignments argued, the views of the writer concerning them can readily be inferred from what has already been said. I am of the opinion that the judgment should be affirmed.

CHRISTIANSON, Ch. J., concurs.